**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-01138-NYW-MDB

ANDREA M. HALL,

      Plaintiff,

v.

THE FOURTH JUDICIAL DISTRICT, and
CHAD C. MILLER, in his official capacity,

      Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' Motion to Dismiss (or "Motion"). [Doc. 17]. The Motion is fully briefed. [Doc. 26; Doc. 29]. Upon review, the Court concludes that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is respectfully **GRANTED**.

**BACKGROUND**

The following facts are drawn from the Verified Complaint and Jury Demand ("Complaint"), [Doc. 1], and taken as true for purposes of the Motion. Plaintiff Andrea M. Hall ("Ms. Hall" or "Plaintiff") is an attorney. [*Id.* at ¶ 4]. In April 2023, she represented a defendant in a criminal trial in Colorado's Fourth Judicial District ("the District"). [*Id.* at ¶ 8]. The presiding judge was Defendant Chad C. Miller ("Judge Miller") (together with the District, "Defendants"). [*Id.*].

On the fourth day of trial, Ms. Hall experienced a severe "exacerbation of long-

COVID,"[1] which she had developed in February 2022.  [*Id.* at ¶¶ 9–10].  The exacerbation "left Ms. Hall bedridden."  [*Id.* at ¶ 10].  Ms. Hall sought medical treatment but suffered an allergic reaction to the medication.  [*Id.* at ¶¶ 11–12].  Knowing she would be unable to attend the next day of trial, Ms. Hall asked another attorney familiar with the case, Ingrid DeFranco ("Ms. DeFranco"),[2] to appear on her behalf.  [*Id.* at ¶¶ 12–13].

Ms. Hall notified Judge Miller's division of her condition the next morning.  [*Id.* at ¶ 14].  Ms. DeFranco appeared in court on her behalf and advised Judge Miller of the same.  [*Id.* at ¶ 15].  Judge Miller questioned the veracity of Ms. DeFranco's representations and expressed a belief that Ms. Hall was attempting to delay the trial.  [*Id.* at ¶ 16].  He indicated that he would offer some accommodations for Ms. Hall and Ms. DeFranco, such as a private virtual meeting room and extra breaks, but these accommodations were never provided.  [*Id.* at ¶¶ 20–21].  Judge Miller also ordered Ms. Hall to submit medical documentation.  [*Id.* at ¶ 22].  He initially declined to seal Ms. Hall's medical records but reversed course after Ms. DeFranco objected.  [*Id.* at ¶¶ 25, 29].

The following Monday, Ms. DeFranco informed Judge Miller that she would try the remainder of the case with Ms. Hall's remote assistance.  [*Id.* at ¶ 26].  The day after that, Ms. Hall requested an extended lunch break so she could receive an intravenous medical

---

[1] "Long COVID" generally refers to a range of symptoms that continue for at least three months after an initial COVID-19 infection.  *See* Harvey V. Fineberg et al., *A Long COVID Definition:  A Chronic, Systemic Disease State with Profound Consequences* 1–2 & box S-1 (2024).  Ms. Hall does not specify what symptoms she experienced before, during, or after her "exacerbation," *see* [Doc. 1], but the Court takes her factual allegations about her condition as true and follows the Parties' lead in referring to her condition as "long COVID."

[2] Ms. DeFranco also represents Ms. Hall in this case.  The Court takes no position on whether Ms. DeFranco is also a material witness who would be barred from representing Ms. Hall at trial.  *See* [Doc. 17 at 3 n.2].

treatment.  [*Id.* at ¶ 27].  Judge Miller refused.  [*Id.*].  Ms. Hall's symptoms worsened, and she was "unable to return to the trial."  [*Id.* at ¶ 28].  Judge Miller eventually granted the defense a mistrial after excluding certain testimony from the defense's expert witness.  *See* [*id.* at ¶¶ 30–33].  He ruled that Ms. Hall would not be permitted to retry the case without co-counsel.  [*Id.* at ¶ 35].

Before and after the mistrial, Judge Miller "repeatedly accused Ms. Hall of grave misconduct and dishonesty[] and publicly defamed her," presumably by reiterating his belief that she had misrepresented her symptoms in order to delay the trial.  [*Id.* at ¶ 34].  He repeated these comments at the next status conference for the case and at sentencing.  [*Id.* at ¶ 36].  And he "continues to hold that [Ms. Hall] may not try a case [before him] without co-counsel."  [*Id.* at ¶ 47].

Ms. Hall brings three claims against Judge Miller and the District.  First, she asserts that they violated Title III of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (collectively, "ADA"), by discriminating on the basis of disability in a public accommodation ("Claim One").  [*Id.* at ¶¶ 37–43]; 42 U.S.C. § 12182.  Second, she alleges that Defendants unlawfully retaliated against her for requesting an accommodation, in violation of Titles II and V of the ADA ("Claim Two").  [Doc. 1 at ¶¶ 44–50]; 42 U.S.C. § 12203.  Third, she claims that the alleged disability discrimination also violated the Rehabilitation Act of 1973 ("Claim Three").  [Doc. 1 at ¶¶ 51–57]; 29 U.S.C. § 794.  Defendants move to dismiss all claims for lack of subject matter jurisdiction and failure to state a claim.  [Doc. 17].

**LEGAL STANDARDS**

**I.    Rule 12(b)(1)**

Rule 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may be classified as a facial attack or a factual attack on subject matter jurisdiction.  Each type of attack implicates a different analytical framework.  The Tenth Circuit has explained that:

> Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms.  First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.  In addressing a facial attack, the district court must accept the allegations in the complaint as true.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (cleaned up).

"However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."  *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (quotation omitted).  A jurisdictional question intertwines with the merits when "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."  *Id.* (quotation omitted).

Defendants attached no exhibits to their Motion and attack only the sufficiency of the allegations in the Complaint.  *See* [Doc. 17].  The Court therefore considers the Motion as a facial attack on jurisdiction.  Ms. Hall asks the Court to convert the Motion to one for

4

summary judgment because the "factual allegations are inextricably intertwined with the jurisdictional issues." [Doc. 26 at 10]. The Court agrees that certain jurisdictional issues raised in the Motion require the Court to resolve aspects of Ms. Hall's substantive claims. But like Defendants, Ms. Hall submits no outside exhibits for the Court's consideration. Since the Parties' dispute turns on the adequacy of the allegations in the Complaint, the Court finds it appropriate to convert the Motion into a Rule 12(b)(6) motion where the jurisdictional analysis intertwines with the merits.[3]

## II.    Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

---

[3] This conversion has little practical effect on the Court's review of the Motion. After all, a Rule 12(b)(6) motion and a Rule 12(b)(1) facial attack involve the same standard of review. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). As relevant here, the only practical difference between a Rule 12(b)(1) motion and a Rule 12(b)(6) motion is that a dismissal under Rule 12(b)(1) is always without prejudice, whereas a dismissal under Rule 12(b)(6) may be with prejudice if granting leave to amend would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216–17, 1219 (10th Cir. 2006).

## ANALYSIS

### I.    Judicial Immunity

Defendants first argue that any damages claims against Judge Miller are barred by judicial immunity.  [Doc. 17 at 6–10].  Judges generally possess absolute immunity from suit for damages or injunctive relief.  *Lawrence v. Kuenhold*, 271 F. App'x 763, 765–66 & n.6 (10th Cir. 2008); *see Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978).  But "[j]udicial immunity applies only to personal capacity claims."  *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)).  And Ms. Hall sues Judge Miller exclusively "in his official capacity." [Doc. 1 at 1].  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which "is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  In an official-capacity suit, "[t]he only immunities that can be claimed . . . are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment."  *Graham*, 473 U.S. at 167.  So any immunity Judge Miller possesses against Ms. Hall's official-capacity claims will arise from the District's sovereign immunity, not his own judicial immunity.  *See Jackson v. Mason*, No. 23-cv-02464-DDC-ADM, 2024 WL 3695293, at *5 (D. Kan. Aug. 7, 2024) (drawing same distinction in official-capacity suit against state court judge).

### II.    Eleventh Amendment Immunity

Because Judge Miller is sued in his official capacity, Defendants' assertion of the District's state sovereign immunity under the Eleventh Amendment extends to him.  *See* [Doc. 17 at 10–22].  Defendants initially asserted state sovereign immunity against

6

Plaintiff's Claim Two, the Title II and Title V claim, and Claim Three, the Rehabilitation Act claim. [*Id.*]. Their reply brief, however, withdraws the immunity argument as to the Rehabilitation Act. [Doc. 29 at 10]; *see also Arbogast v. Kansas*, 789 F.3d 1174, 1182–83 (10th Cir. 2015) (discussing state sovereign immunity in the Rehabilitation Act context). State entities claiming sovereign immunity generally bear the burden of proof, and the Court "is not obligated" to consider the issue sua sponte. *See Hennessy v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 531–32 (10th Cir. 2022) (quotation omitted). The Court accordingly limits its analysis to whether Defendants are entitled to sovereign immunity against Ms. Hall's claim under Title II and Title V, which the Court addresses in turn.

The Eleventh Amendment immunizes states from suits brought in federal court by their citizens and citizens of other states. U.S. Const. amend. XI; *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). Where state sovereign immunity applies, federal courts lack subject matter jurisdiction. *Williams*, 928 F.3d at 1212. This immunity extends to entities that are "arms of the state." *Colby v. Herrick*, 849 F.3d 1273, 1276–77 (10th Cir. 2017). The Parties do not dispute that the District is an "arm of the state" for Eleventh Amendment purposes. *See* [Doc. 17 at 10 n.7; Doc. 26 at 8]; *see also, e.g.*, *Sladek v. Bank of Am., NA*, No. 24-1181, 2024 WL 4224029, at *4 n.6 (10th Cir. Sept. 18, 2024) (recognizing that a Colorado state district court enjoys Eleventh Amendment immunity).

Yet a state entity's Eleventh Amendment immunity is not absolute. *See Arbogast*, 789 F.3d at 1181–82. Pertinent here, Congress may abrogate Eleventh Amendment immunity when it acts "pursuant to a valid exercise of its power under § 5 of the Fourteenth

7

Amendment to enforce the substantive guarantees of that Amendment."[4] *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). Congress's § 5 authority permits it to "enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Id.* (quotation omitted).

Congress unmistakably sought to exercise this power when enacting the ADA. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001). The Act states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of [the ADA]." 42 U.S.C. § 12202. In *Lane*, the Supreme Court upheld Title II of the ADA as a valid abrogation of state sovereign immunity under § 5, insofar as the law addresses disability discrimination in the "class of cases implicating the fundamental right of access to the courts." 541 U.S. at 533–34. The Court declined to consider, however, "whether Title II's duty to accommodate exceeds what the Constitution requires in the class of cases that implicate only [the] prohibition on irrational discrimination." *Id.* at 532 n.20. Two years later, in *United States v. Georgia*, the Court reiterated that Title II validly abrogates state sovereign immunity "for conduct that *actually* violates the Fourteenth Amendment." 546 U.S. 151, 159 (2006). But *Georgia* did not address whether Title II

---

[4] Another exception to Eleventh Amendment immunity exists for claims seeking prospective relief against state officials for violations of federal law. *See Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Ms. Hall requests prospective relief against Judge Miller in his official capacity. *See* [Doc. 1 at 7–8]. But neither side addressed this issue in its briefing, and the Court has no obligation to consider state sovereign immunity issues sua sponte. *Hennessy*, 53 F.4th at 531; *Nelson v. Geringer*, 295 F.3d 1082, 1098 n.16 (10th Cir. 2002) ("[J]udicial consideration of Eleventh Amendment issues sua sponte is discretionary, not mandatory."). In any event, as explained below, Ms. Hall fails to state a claim, so an *Ex parte Young* analysis is ultimately unnecessary.

may prophylactically abrogate state sovereign immunity outside the context approved in

*Lane*. *See id.* at 158 (noting the Court's internal "disagree[ment]" on this front).

As the Tenth Circuit has explained, *Georgia* prescribed a three-step framework for

evaluating Title II claims against a state. *See Guttman v. Khalsa*, 669 F.3d 1101, 1113

(10th Cir. 2012). On a "claim-by-claim basis," a district court must determine

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what
> extent such misconduct also violated the Fourteenth Amendment; and
> (3) insofar as such misconduct violated Title II but did not violate the
> Fourteenth Amendment, whether Congress's purported abrogation of
> sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *Georgia*, 546 U.S. at 159).[5] The Court's inquiry thus begins with whether Ms.

Hall has adequately alleged a violation of Title II. This analysis intertwines with the merits

of her claim, so the Court applies Rule 12(b)(6). *See Paper, Allied-Indus.*, 428 F.3d at

1292.

---

[5] Because *Lane* upheld Title II as prophylactic legislation for cases implicating the fundamental right of access to the courts, *see Guttman*, 446 F.3d at 1034–35, *Lane* may short-circuit the three-step framework and prevent Defendants from claiming sovereign immunity at all. But Ms. Hall does not claim that Judge Miller's conduct implicated the fundamental right of court access. Nor will the Court presume that such a right is implicated; some out-of-circuit authorities have concluded that the right of court access was not implicated even where the defendant was a judicial entity. *See, e.g., Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 740 (7th Cir. 2016) ("This case differs from a *Lane*-style claim of denial of access to a courthouse, because [plaintiff's] exclusion from the courthouse stemmed from a judicial order, not from a courthouse policy or practice."); *King v. Marion Cnty. Cir. Ct.*, 868 F.3d 589, 592 (7th Cir. 2017) (holding that limits on subsidies for court-ordered mediation services did not affect the right of court access described in *Lane*); *Zabriskie v. Ct. Admin.*, 172 F. App'x 906, 909 (11th Cir. 2006) (finding no constitutional violation where plaintiff was denied access to courthouse's self-help center for pro se litigants). Neither Party addresses this issue in their briefing, and the Court need not resolve it here. For purposes of the Motion, this issue is purely academic, because the Court considers this portion of the Motion under a Rule 12(b)(6) standard and concludes that Ms. Hall fails to adequately allege an ADA claim.

### A.    Failure-to-Accommodate Claim Under Title II

Ms. Hall's Title II claim alleges that Defendants failed to accommodate her disability of exacerbated long COVID.  *See* [Doc. 1 at ¶¶ 41, 44].  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II, Ms. Hall must plausibly allege that "(1) [she] is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability."  *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

### 1.    Qualifying Disability

Defendants first attack whether Ms. Hall has adequately alleged that she was disabled within the meaning of the ADA.  [Doc. 17 at 13].  The ADA defines a disability as, inter alia, "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  "To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) [allege] the impairment substantially limits one or more of those activities."  *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (quotation omitted).

Relying on regulatory guidance, Defendants admit that long COVID can be a disability, but they contend that an "individualized assessment" is necessary to determine whether the condition substantially limits a major life activity.  [Doc. 17 at 13].  And they argue that Ms. Hall's "conclusory statements surrounding her alleged disability" are

10

insufficient because they "offer[] no facts supporting substantial limitations on major life activities."  [*Id.* at 13–14]; *see also* [Doc. 29 at 7–9].  Ms. Hall responds that "long COVID is an ADA-recognized disability."  [Doc. 26 at 9 (capitalization altered)].  And relying on her allegation that the long COVID exacerbation left her "bedridden," Ms. Hall contends that she suffered a substantial limitation on her ability to "care for herself, perform manual tasks, eat, sleep, walk, stand, lift, bend, concentrate, think, write, interact with others, and work as a trial lawyer."  [*Id.*]; *see* [Doc. 1 at ¶ 10].  Ms. Hall offers no authority or explanation to support either of these positions.  Drawing reasonable inferences in Ms. Hall's favor, though, the Court agrees that being "bedridden" implies some limitation on Ms. Hall's ability to walk, stand, and perform basic tasks that require walking or standing. *See also* [Doc. 1 at ¶ 19 (alleging that, on the morning after Ms. Hall's COVID exacerbation and ensuing allergic reaction, she was "unable to walk" and brought to court in a wheelchair)].  These qualify as major life activities under the ADA.  *See* 42 U.S.C. § 12102(2)(A).  The Court thus understands the Parties' disagreement to turn on whether Ms. Hall has adequately alleged a "substantial" limitation on these activities.

**Substantial Limitation.**  "An impairment is substantially limiting when it renders an individual either unable or significantly restricted in her ability to perform a major life activity compared to the average person in the general population."  *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1218 (10th Cir. 2010) (quotation omitted).  A medical diagnosis alone is insufficient to show that the plaintiff has experienced a substantial limitation. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).  Rather, a plaintiff must allege that "the extent of the limitation caused by their impairment in terms of their own experience is substantial."  *Id.* (quotation omitted).  The substantial limitation inquiry is

11

based on the plaintiff's "own experience," "because an impairment that is disabling for some may not be disabling for others." *Carter*, 662 F.3d at 1143 (quotations omitted). In considering a plaintiff's experience with her impairment, the Court considers three factors: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." *Id.* at 1145 (quotation omitted).

Under the *Carter* factors, Plaintiff's Complaint lacks facts that plausibly allege a substantial limitation on any major life activity. Her allegation that the long COVID exacerbation was "severe" is conclusory. [Doc. 1 at ¶ 10]. She provides no specific factual allegations regarding the nature and severity of her symptoms or how they affected her ability to stand, walk, or perform other basic tasks. *See generally* [*id.*]. In fact, the Complaint provides no information about what Ms. Hall's symptoms actually were. [*Id.*].

Nor does Ms. Hall provide any factual allegations about the duration of the impairment. While temporary conditions may constitute a disability under the ADA, *Skerce v. Torgeson Elec. Co.*, 852 F. App'x 357, 362 (10th Cir. 2021), courts continue to recognize that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are *usually* not disabilities," *Randall v. Smith & Edwards Elec. Co.*, No. 1:20-cv-00183-DBB, 2023 WL 3742818, at *25 (D. Utah May 31, 2023) (quotation omitted); *see also, e.g.*, *Vargas v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 16-cv-05733-JPO, 2020 WL 2836824, at *6 (S.D.N.Y. June 1, 2020) ("Impairments that last only for a short period of time are typically not covered [by the ADA], although they may be covered if sufficiently severe." (quotation omitted)); *Baum v. Dunmire Prop. Mgmt.*, No.

12

21-cv-00964-CMA-NYW, 2022 WL 889097, at *4–5 (D. Colo. Mar. 25, 2022) (concluding that 15-day bout of COVID-19 was not a disability, even though symptoms were severe and ultimately fatal).  Here, Ms. Hall only alleges being unable to walk on April 7, 2023, with a reference to additional treatment on April 11, 2023.  [Doc. 1 at ¶¶ 14, 19, 27].  Viewing the allegations *very* favorably to Ms. Hall, her statement that the exacerbation occurred "in April, 2023" suggests that her symptoms lasted 24 days at most, from the onset of symptoms on April 6 to the end of the month.  [*Id.* at ¶ 10].  And, again, she provides no allegations about the severity of her symptoms over the course of those 24 days.  *See Drepaul v. Wells Fargo Bank N.A.*, No. 3:23-cv-00123-MPS, 2024 WL 127402, at *5 (D. Conn. Jan. 11, 2024) (finding insufficient allegations of disability where plaintiff indicated her COVID-19 symptoms lasted about four weeks and failed to describe the frequency, duration, or severity of her symptoms during that period).  Ms. Hall submits no authority to support the conclusion that an impairment of unspecified severity and lasting three-and-a-half weeks or less states a cognizable "substantial limitation" under the ADA.  *Cf., e.g.*, *Skerce*, 852 F. App'x at 362 (concluding that temporary impairment lasting two to three months constituted a disability, based partly on regulatory guidance stating that a restriction "that lasts for several months" is a substantial limitation (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (app.))); *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1227 (9th Cir. 2022) (similar).

Plaintiff similarly omits any information about the permanent or long-term impact of the event.  To be sure, an "episodic" impairment constitutes a disability if it imposes a substantial limitation "when active."  42 U.S.C. § 12102(4)(D).  But Ms. Hall does not allege that she experienced any other comparable long COVID exacerbations before or

after the April 2023 incident.  And her allegations that she had never previously been ill enough to require a continuance, [Doc. 1 at ¶ 35], and that the severity of her condition was triggered by an allergic reaction, [*id.* at ¶ 12], indicate that this was an isolated event. While the Court agrees with Ms. Hall that she is entitled to all reasonable inferences that may be drawn from her pleading, [Doc. 26 at 9], the Court cannot assume facts not pled nor speculate on her behalf, *see Cressman v. Thompson*, 719 F.3d 1139, 1154 (10th Cir. 2013) (finding that the district court erred "because it assumed or speculated about facts rather than accepting, as it should have with a motion to dismiss, the factual allegations" in plaintiff's complaint).  Absent additional meaningful details about Ms. Hall's alleged condition, the Court cannot conclude that she has plausibly alleged a "substantial limitation" that falls within the ADA's ambit.

Because Ms. Hall fails to adequately allege that she was a qualified individual with a disability, she fails to state a claim under Title II.  *See Robertson*, 500 F.3d at 1193. And because Ms. Hall does not allege a violation of Title II, the District is entitled to state sovereign immunity.  *See Guttman*, 669 F.3d at 1113.  The Court need not reach the remaining elements of her claim or the remaining steps of the *Georgia* framework. [6]  The Title II portion of Count Two is respectfully **DISMISSED without prejudice**.

### B.    Retaliation Claim Under Title V

The District also asserts state sovereign immunity against the Title V portion of Count Two.  Neither the Supreme Court nor the Tenth Circuit have addressed whether

---

[6] Nor does the Court reach the District's arguments regarding various other asserted deficiencies in this claim, including that Ms. Hall fails to allege how Judge Miller's rulings denied her the benefits of the District's services, that she fails to allege that her requested accommodations were reasonable or necessary, and that she fails to allege a discriminatory motive.  *See* [Doc. 17 at 14–19].

Congress validly abrogated state sovereign immunity for claims for ADA retaliation.  Most courts addressing the issue have found that a state entity's immunity against a Title V claim rises or falls with the underlying discrimination claim.  For instance, since the Supreme Court held that Congress did not validly abrogate state sovereign immunity through Title I of the ADA, *see Garrett*, 531 U.S. at 360, a clear majority of persuasive authorities have held that retaliation claims based on Title I also fail, *see, e.g.*, *Yerdon v. Poitras*, 120 F.4th 1150, 1154–55 (2d Cir. 2024) (collecting cases).  Similarly, courts have held that Title V claims based on Title II fail if the Eleventh Amendment bars the Title II claim.  *See, e.g.*, *Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) ("[A] plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular state.  Because Block's underlying Title II claim is barred by sovereign immunity, so is his Title V retaliation claim." (quotation and footnote omitted)); *Parker v. Univ. of Ala. Police Dep't*, 759 F. Supp. 3d 1193, 1207 (N.D. Ala. 2024) (similar); *cf. Maioriello v. N.Y. State Off. for People with Developmental Disabilities*, No. 1:14-cv-00214-GTS-CFH, 2015 WL 5749879, at *12 (N.D.N.Y. Sept. 30, 2015) ("[I]nsofar as [p]laintiff can state a claim under Title II and Title III of the ADA, her Title V claim will not be barred by the Eleventh Amendment." (collecting cases)).  But at least the Eighth Circuit has applied the three-step *Georgia* framework and evaluated the merits of a Title V claim before reaching any sovereign immunity issues.  *See Lors v. Dean*, 746 F.3d 857, 864–65 (8th Cir. 2014) (Title V claim based on Title I discrimination).

As an initial matter, the Court concurs with the persuasive authorities indicating that Plaintiff cannot press a Title V claim against a state entity where her underlying Title

15

II claim also fails.  Ms. Hall seeks to hold the District liable under both Title II and Title V

for the same series of rulings and comments by Judge Miller.  *See* [Doc. 1 at ¶¶ 44–50].

Her response brief confirms that the alleged discrimination and the alleged retaliation are

the same conduct.  *See* [Doc. 26 at 9–10].  It would be illogical to find the District immune

for Judge Miller's conduct declining to accommodate Ms. Hall but expose the District to

liability for the same conduct that also allegedly retaliated against Ms. Hall for requesting

the accommodation.   As one district court explained, "[i]f a state is immune from

underlying discrimination, then it follows that the state must be immune from claims

alleging retaliation for protesting against discrimination."  *Chiesa v. N.Y. State Dep't of

Lab.*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009).  Despite the District's citation to the Fifth

Circuit's *Block* decision for this approach, [Doc. 17 at 19–20], Ms. Hall failed to address

the issue in her response brief or identify any authorities finding state sovereign immunity

abrogated for a freestanding Title V claim, *see* [Doc. 26 at 9–10].  The Court need not

make Ms. Hall's arguments for her, *see United States v. Davis*, 622 F. App'x 758, 759

(10th Cir. 2015), and respectfully concludes that the Title V portion of Count Two is barred

by the Eleventh Amendment.

Even if the Court did follow the Eighth Circuit's lead and begin with the three-step

*Georgia* framework, Ms. Hall fails to adequately allege a Title V claim.  The ADA prohibits

"interfere[nce] with any individual . . . on account of his or her having exercised or enjoyed

. . . any right granted or protected by this chapter."  42 U.S.C. § 12203(b).  To state a Title

V retaliation claim, Ms. Hall must plausibly allege that (1) she engaged in a protected

activity; (2) she was subjected to an adverse action; and (3) there was a causal

connection between the protected activity and the adverse action.   *See Foster v.*

*Mountain Coal Co.*, 830 F.3d 1178, 1187 (10th Cir. 2016) (employment context);[7] *see also, e.g.*, *Glenn v. Davis Sch. Dist.*, No. 1:19-cv-00008-DAK, 2019 WL 5423728, at *3–4 (D. Utah Oct. 23, 2019) (applying these elements to ADA retaliation claim based on Title II violations).

As with the Title II claim, Ms. Hall's Title V claim fails at the first element—protected activity. The Tenth Circuit has recognized that requesting an accommodation can constitute a protected activity. *Foster*, 830 F.3d at 1187. But to be "protected," the plaintiff must allege that she had a reasonable, good-faith belief that she was entitled to an accommodation. *Id.* As explained above, Ms. Hall's vague allegations regarding her asserted disability provide no information about her symptoms other than the fact that she was "bedridden" by a combination of long COVID and an allergic reaction. *See* [Doc. 26 at 9]. She provides no factual allegations about her history with long COVID (or her unspecified medication allergy); the duration, frequency, and severity of her symptoms; or any long-term effects. Without allegations about what Ms. Hall knew at the time she made her request, the Court cannot conclude that Ms. Hall has plausibly alleged a reasonable, good-faith belief that her condition would qualify as a disability under the ADA. *Cf. Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1254–65 (10th Cir. 2001) (finding reasonable belief of disability at summary judgment based on evidence of

---

[7] Plaintiff does not contend that Judge Miller directly expressed a retaliatory animus, so the Court looks to these three elements—the elements of a prima facie retaliation claim under the *McDonnell Douglas* burden-shifting framework. *See Foster*, 830 F.3d at 1186–87. While the framework is not a pleading requirement, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), it may guide the Court in determining whether a plaintiff has sufficiently pleaded a cause of action based on indirect evidence, *see Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990) ("The *McDonnell Douglas* inferences provide assistance to a judge as he addresses motions to dismiss[.]").

symptoms combined with case law concluding that similar impairments constituted disabilities).  For this additional, independent reason, Ms. Hall fails to state a Title V claim, and Defendants are entitled to state sovereign immunity.[8]  The Title V portion of Count II is respectfully **DISMISSED without prejudice**.

### III.    Remaining Claims

Finally, the Court turns to Counts One and Three.  Starting with Count One—the Title III claim—the District did not assert Eleventh Amendment immunity and instead asks the Court to dismiss this claim with prejudice.  *See* [Doc. 17 at 22–23].  Defendants emphasize that Title III applies only to "public accommodations," which includes certain "private entities."  42 U.S.C. §§ 12181(7), 12182(a).  As a government entity, the District falls outside the scope of Title III, so Ms. Hall cannot bring claims under that portion of the ADA.  *See, e.g.*, *Falchenberg v. N.Y. State Dep't of Educ.*, 642 F. Supp. 2d 156, 165–66 (S.D.N.Y. 2008).  Ms. Hall does not respond to this argument and does not defend her Title III claim.  *See* [Doc. 26].  The Court respectfully agrees with Defendants that Title III is inapplicable and that any amendment of Ms. Hall's Title III claim would be futile.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  Count One is **DISMISSED with prejudice**.

The Court's Eleventh Amendment analysis disposes of Count Three, the Rehabilitation Act claim.  The Rehabilitation Act's antidiscrimination provision mirrors its ADA counterparts, including Title II, *compare* 29 U.S.C. § 794(a), *with* 42 U.S.C. § 12132, and incorporates the ADA's definition of disability, *see* 29 U.S.C. §§ 705(20)(B), 794(a).

---

[8] Again, the Court does not reach Defendants' remaining arguments regarding the adverse action and causation requirements.  *See* [Doc. 17 at 21–22].

Courts accordingly apply the same standards to Rehabilitation Act claims and ADA claims.  *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020). Because Ms. Hall fails to plausibly allege a Title II claim, her Rehabilitation Act claim fails for the same reasons.[9]  Count Three is respectfully **DISMISSED without prejudice**.

### CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendants' Motion to Dismiss [Doc. 17] is **GRANTED**;

(2)    Defendants are **AWARDED** their costs under D.C.COLO.LCivR 54.1; and

(3)    The Clerk of Court is **DIRECTED** to enter judgment and **TERMINATE** the case.

DATED:  June 24, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[9] It is unclear whether the Rehabilitation Act claim includes a retaliation theory.  *See* [Doc. 1 at ¶¶ 51–57].  Even if it does, Ms. Hall fails to state a retaliation claim, as explained above.